UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DR. WILLIAM BEN JOHNSON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-0520-CVE-PJC |
| ) | |
| DENTSPLY SIRONA INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is Plaintiff's Motion to Remand and Brief in Support (Dkt. # 23) and Defendant's Motion to Dismiss, Stay and/or Transfer and Supporting Brief (Dkt. ## 16, 19). Plaintiff Dr. William Ben Johnson, moves to remand this action to the District Court of Tulsa County on the ground that the amount in controversy does not meet the jurisdictional minimum for diversity cases. Dkt. # 23, at 1. Defendant Dentsply Sirona Inc. responds, arguing that its removal to this Court was proper because the amount in controversy exceeds the jurisdictional minimum. Dkt. # 26, at 5. Defendant moves to dismiss, stay, or transfer this action based on a contract between the parties that includes a binding arbitration clause. Dkt. # 16, at 5. Plaintiff responds, arguing that this Court does not have subject matter jurisdiction, that there is no enforceable arbitration clause, that plaintiff's claims are not covered by the arbitration clause, that the Court should not exercise its discretion to stay this proceeding, and that no valid forum-selection clause exists. Dkt. # 25.

**I.**

Defendant is a business that manufactures, markets, and sells endodontic products for the dental industry. Dkt. # 16-4, at 22. Plaintiff is an endodontist and "well recognized and respected

figure in the dental and endodontic business." Id. The parties entered into an agreement, effective June 1, 2007 (2007 Agreement), under which plaintiff would perform consulting services for defendant for ten years and receive between $100,000 and $300,000 in compensation annually.[1] Id. at 23-25. Defendant would also pay plaintiff royalties for inventions assigned to defendant under the 2007 Agreement. Id. at 25-27. Plaintiff agreed not to disclose any confidential information about defendant's business affairs and not to work in competition with defendant for three years after the termination of the 2007 Agreement. Id. at 27-28. The 2007 Agreement also contains a dispute resolution clause that states:

> Any dispute or claim relating to this Agreement, other than a claim for equitable relief[,] or any amendment thereof, including without limitation as to its existence, validity, enforceability, interpretation, performance, breach or damages, including claims in tort, whether arising before or after the termination of this Agreement, shall be settled only by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("Rules"); provided, however, that: (a) the arbitration shall take place in Chicago, Illinois; (b) there shall be one (1) arbitrator, who shall be selected under the normal procedures prescribed in the Rules; (c) subject to legal privileges each party shall be entitled to discovery in accordance with the Federal Rules of Civil Procedure; (d) at the arbitration hearing each party may present evidence as prescribed by the arbitrator; (e) the arbitrator shall not have the power to award punitive damages; (f) the arbitrator shall issue a written decision explaining the basis of such decision; (g) such decision shall be final, binding and enforceable in any court of competent jurisdiction; (h) the parties shall share equally any fees and expenses of the arbitrator and of the American Arbitration Association.

Id. at 30. In October 2012, plaintiff filed a demand for arbitration, arguing that defendant owed him additional royalty payments under the 2007 Agreement. Dkt. # 16-2, at 2. The parties arbitrated their

---

[1] Under the 2007 Agreement, plaintiff was to receive $100,000 in the first year of the contract, $200,000 annually in years two, three, and four, and $300,000 annually for the remaining six years of the contract. Dkt. # 16-4, at 32.

2

dispute in Chicago, Illinois as per the dispute resolution clause in the 2007 Agreement, and plaintiff was awarded over $1,000,000 in damages in July 2015.[2] Id. at 21-22.

On June 27, 2007, an asset purchase and sale agreement (Asset Agreement) was entered into by Tulsa Dental Products LLC ( Buyer), a wholly owned subsidiary of defendant; Sportswire LLC (Seller), an Oklahoma business engaged in manufacturing, marketing, and selling various products manufactured from titanium alloy; and several individuals, including plaintiff (Owners). See Dkt. # 25-1, at 7. In the Asset Agreement, the Buyer agreed to purchase certain inventory and equipment from the Seller. Id. The Asset Agreement also contains a dispute resolution clause that states:

> Subject to a party's right to seek specific performance or injunctive relief from a court, any dispute or claim relating to this Agreement, any Ancillary Agreement or document executed in connection with this Agreement or the transactions contemplated by this Agreement, or any amendment of any of the foregoing . . . shall be settled only by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("Rules"); provided, however, that: (a) the arbitration shall take place in Atlanta, Georgia; (b) Seller and Owners shall be deemed to be one party to the arbitration; (c) there shall be three (3) arbitrators who shall be selected under the normal procedures prescribed in the Rules; (d) subject to legal privileges, each party shall be entitled to discovery in accordance with the Federal Rules of Civil Procedure; (e) at the arbitration hearing, each party may make written and oral presentations to the arbitrator, present testimony and written evidence and examine witnesses; (f) the arbitrator shall be authorized to award all or any portion of the legal fees relating to the proceeding to the prevailing party, provided the arbitrator shall not have the power to award punitive damages; (g) the arbitrator shall issue a written decision explaining the bases for such decision; (g) such decision shall be final, binding and enforceable in any court of competent jurisdiction; and (I) Buyer and Seller shall share equally any fees and expenses of the arbitrator and of the American Arbitration Association.

Id. at 33. The Asset Agreement defines "Ancillary Agreements" in the following sentence: "Seller has all requisite corporate power and authority to enter into and perform its obligations under this

---

[2] The exact amount of the award was later adjusted by a relatively small amount due to a computational error. See Dkt. # 16-3.

Agreement and each other agreement required by this Agreement to be entered into and performed by Seller ("Ancillary Agreements"). Id. at 14.

On July 12, 2016, plaintiff initiated this suit in the District Court for Tulsa County, State of Oklahoma, seeking a declaration that the confidentially and non-compete provisions of the 2007 Agreement are unenforceable and an injunction against defendant from seeking to enforce either provision. Dkt. # 2-1. Plaintiff's petition did not allege any monetary damages. See id. On August 8, 2016, defendant removed the suit to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Dkt. # 2. Plaintiff moves to remand this action to the District Court of Tulsa County, State of Oklahoma, arguing that this Court does not have subject matter jurisdiction because the amount in controversy does not exceed $75,000 as required under 28 U.S.C. § 1332(a). Dkt. # 23. Defendant moves to dismiss, stay, and/or transfer this proceeding, arguing that the 2007 Agreement binds the parties to resolve plaintiff's claims in arbitration. Dkt. # 16.

Defendant has initiated arbitration proceedings in Chicago pursuant to the 2007 Agreement. Dkt. # 16-4. Plaintiff objected to the location of the arbitration, arguing that the proper location was Atlanta pursuant to the Asset Agreement. Dkt. # 29-2. The American Arbitration Association decided that the arbitration would proceed in Chicago, subject to a final determination by the arbitrator to be appointed. Dkt. # 32.

## II.

The Court first considers whether it has subject matter jurisdiction over this suit. Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute. Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994). A case must be remanded to state court if at any time before final judgment it appears the court lacks subject matter

jurisdiction. 28 U.S.C. § 1447(c). Defendant asserts that this Court has jurisdiction under 28 U.S.C. § 1332(a)(1). Dkt. # 2, at 1. Section 1332(a)(1) grants federal courts jurisdiction over civil actions in which the matter in controversy exceeds $75,000 and the suit is between citizens of different states.[3] 28 U.S.C. § 1332(a). "In cases seeking declaratory and injunctive relief, 'the amount in controversy is measured by the value of the object of the litigation.'" Lovell v. State Farm Mut. Auto. Ins. Co., 466 F.3d 893, 897 (10th Cir. 2006) (quoting Hunt v. Wash. State. Apple Advert. Comm'n, 432 U.S. 333, 347 (1977)). The Tenth Circuit follows the "either viewpoint rule," which considers either the value to the plaintiff or the cost to the defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum. Id.; see also Smith v. Adams, 130 U.S. 167, 175 (1889) ("It is conceded that the pecuniary value of the matter in dispute may be determined . . . by the increased or diminished value of the property directly affected by the relief prayed, or by the pecuniary result to one of the parties immediately from the judgment.").

In a notice of removal, the defendant is required to include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). If the plaintiff contests, or the court questions, the removing defendant's allegations regarding the amount in controversy, the defendant must prove by a preponderance of the evidence jurisdictional facts that make it possible that $75,000 is at issue. See McPhail v. Deere & Co., 529 F.3d 947, 955 (10th Cir. 2008). The Tenth Circuit had identified several methods that a removing defendant may use to prove the jurisdictional facts by a

---

[3] Plaintiff does not dispute that the diversity of citizenship requirement is met in this case. See generally Dkt. # 23.

preponderance of the evidence when the complaint relies on state court pleading rules that do not require the plaintiff to allege a specific amount of damages. First, the defendant may rely on facts stated in the complaint to estimate the amount of damages plaintiff is seeking. Id. at 955-56. Second, a defendant may rely on other documents, such as discovery responses, affidavits, or other "summary-judgment-type evidence" that may be in defendant's possession. Id. at 956 (citing Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)). Third, any settlement offers between the parties suggesting that the amount in controversy exceeds $75,000 should be considered by the district court. Id. Once the removing defendant has sufficiently proven jurisdictional facts, the defendant "is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." Id. at 954.

Plaintiff argues that the jurisdictional minimum is not met because he is asking for no monetary relief, and defendant cannot prove by a preponderance of the evidence that value of the injunction exceeds $75,000[4] because plaintiff has been cut out of defendant's business and therefore is adding no value it. See Dkt. # 23. Defendant argues that the value of the injunction far exceeds the jurisdictional minimum as shown by the amount of money plaintiff has received in royalties and for his consulting services, and the value of defendant's trade secrets and confidential business information to which plaintiff has been privy to during his time working for defendant. See Dkt. # 26.   Defendant has proved jurisdictional facts by a preponderance of the evidence that it is possible that $75,000 is at stake in this action. At stake in this suit are the enforceability of the 2007

---

[4] Plaintiff states on more than one occasion in his brief that defendant has failed to establish that the amount in controversy exceeds $75,000. Dkt. # 23, at 2, 7. This is an incorrect statement of defendant's burden. Defendant must prove by a preponderance of the evidence jurisdictional facts that make it possible that $75,000 is at issue. See McPhail, 529 F.3d at 955.

Agreement's non-compete and confidentiality provisions. See Dkt. # 2-1. Defendant has shown, inter alia, the following facts by a preponderance of the evidence through the declaration of its President and Chief Operating Officer: (1) that plaintiff intends to compete against defendant by manufacturing and selling an endodontic file in competition with defendant's ProTaper NEXT; (2) that the ProTaper Next generated more than $200,000,000 in sales in 2015 and year-to-date in 2016 and well over $75,000 in profit; (3) that plaintiff has been paid about $9,000,000 in royalties under the 2007 Agreement; (4) that defendant agreed to increase the amount it compensated plaintiff for his consulting fees in years five through ten of the 2007 Agreement, from $200,000 to $300,000 annually; and (5) that defendant has not tried to renegotiate plaintiff's contract to decrease his consulting fee since 2011. Dkt. # 26-1, at 3-6. These facts are more than enough to establish the possibility that $75,000 is at stake in this action.

Although defendant need only show the amount in controversy can be met from either the value to the plaintiff or the cost to defendant, see Lovell, 466 F.3d at 897, defendant has met its burden from both perspectives. Under the 2007 Agreement plaintiff was to earn $300,000 annually for his consulting services. Dkt. ## 26-1, at 5; 26-2, at 18. Additionally, past history shows that plaintiff's annual consulting fee was much less than the amount he has earned in royalties under the 2007 Agreement.[5] See Dkt. # 26-2, at 4-5. Despite plaintiff's claims that "like an aging star athlete" he might not be worth that much in 2016, Dkt. # 23, at 7, these facts certainly raise the possibility

---

[5]     Plaintiff asserts that the amount he has earned in royalties is irrelevant to what is at stake in this suit because any royalty payments defendant owes him will not be affected by this proceeding. Dkt. # 23, at 5. However, even assuming plaintiff is correct, how much he has earned from royalties under the 2007 Agreement is relevant to the estimation of how much plaintiff might earn if the non-compete and confidentiality provisions are invalidated and he is free to pursue other business opportunities.

that invalidating the non-compete and confidentiality provisions of the 2007 Agreement would be worth $75,000 to plaintiff. Moreover, if defendant were to lose this suit, plaintiff, a well known and respected endodontist, would seek to manufacture and sell a file that would compete with one of its products that has generated over $200,000,000 in sales in less than two years. Dkt. # 26-2, at 3-4. Those facts are enough to raise the possibility that the cost to defendant would be at least $75,000. Therefore, the amount in controversy is satisfied, and the Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1).

### III.

The Court next considers defendant's motion to dismiss or stay these proceedings (Dkt. # 16) based on the 2007 Agreement's dispute resolution clause.[6] The Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, represents a strong public policy in favor of arbitration, and states that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 559 U.S. 662 (2010); Vaden v. Discover Bank, 556 U.S. 49, 58 (2009). The FAA "requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation." Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1514 (10th Cir. 1995).

"The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and

---

[6] Defendant also moves for this Court to transfer these proceedings to the Northern District of Illinois, Eastern Division if it becomes necessary to compel plaintiff to submit this proceeding to arbitration. Dkt. # 16, at 19-20. As defendant notes, this step may not be necessary. See id. Thus, defendant's motion to transfer is premature and therefore moot.

8

unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)) (alteration in original). However, "procedural questions" are presumptively for the arbitrator to decide. Id. at 84. If a contract contains an arbitration clause, there is a presumption in favor of arbitrability that can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT & T Techs., 475 U.S. at 650. However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 648. When determining whether a particular dispute falls within the scope of an arbitration clause, a court should first classify the clause as either broad or narrow. Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc., 567 F.3d 1191, 1196 (10th Cir. 2009). A broad arbitration provision is one that "refer[s] all disputes arising out of a contract to arbitration." Cummings v. FedEx Ground Package Sys., Inc., 404 F.3d 1258, 1262 (10th Cir. 2005). In contrast, a narrow arbitration provision "manifest[s] an intent to narrowly limit arbitration to specific disputes regarding the termination" of a contract. Id. When reviewing a broad arbitration provision, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id. at 1261 (quoting Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001)).

Defendant moves to dismiss or stay this suit because it falls under the 2007 Agreement's binding arbitration clause. See Dkt. # 16. Plaintiff responds that the Court does not have subject

matter jurisdiction,[7] that there is no enforceable arbitration clause, that his claims are not covered by the 2007 Agreement's arbitration clause, and that the Court should not exercise its discretion to stay this suit. See Dkt. # 25.

Plaintiff argues that the 2007 Agreement's arbitration clause is unenforceable because it conflicts with the Asset Agreement's arbitration clause. However, both agreements bind the parties to arbitration to be conducted pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA) with broad arbitration clauses that exclude only equitable relief.[8] Compare Dkt. # 16-4, at 30, with Dkt. # 25-1, at 33. The differences between the two provisions are (1) location of arbitration (Chicago under the 2007 Agreement, and Atlanta under the Asset Agreement), (2) number of arbitrators (one under the 2007 Agreement, and three under the Asset Agreement), and (3) the ability of the arbitrator to award legal fees to the prevailing party (the arbitrator is expressly allowed to do so under the Asset Agreement, and the 2007 Agreement is silent on the matter). Compare Dkt. # 16-4, at 30, with Dkt. # 25-1, at 33. It is the duty of the Court to determine whether the parties have agreed to arbitrate this matter, but the procedural issues of the arbitration are presumptively to be decided by the arbitrator. See Howsam, 537 U.S. at 83-84. In this case, the parties have clearly agreed to arbitrate most disputes arising from their business relationship, and the differences between the two arbitration clauses are the kind of procedural issues

---

[7]   The Court has considered and rejected plaintiff's jurisdictional argument earlier in this opinion. See supra at II.

[8]   The language in the Asset Agreement arbitration clause is slightly different, excluding "specific performance or injunctive relief." See Dkt. # 25-1, at 33. However, the terms are largely interchangeable. See *Equitable Remedy*, Black's Law Dictionary (10th ed. 2014) ("A remedy, usu. a nonmonetary one such as an injunction or specific performance, obtained when available legal remedies, usu. monetary damages, cannot adequately redress the injury.").

that an arbitrator is expected to make. The AAA, by whose rules the parties have clearly expressed in both agreements that they will be bound, has decided that the arbitration will proceed in Chicago. Dkt. # 32. It is not the job of the Court to disturb the AAA's decision as to arbitration procedure.[9] Because the parties have not clearly indicated otherwise, it is the Court's responsibility to decide whether the parties have agreed to arbitrate this matter, and for the reasons below, the Court finds that whichever arbitration clause controls, these proceedings should be stayed pending arbitration of the matter.

First, the Court considers the 2007 Agreement's arbitration clause. The Court finds that the arbitration clause is broad, because it covers virtually all disputes arising between the parties with a narrow carve-out only for equitable relief. See Dkt. # 16-4, at 30. Thus, there is a presumption of arbitrability. See Cummings, 404 F.3d at 1261. Plaintiff argues that his claims fall under the equitable relief carve-out. Dkt. # 25, at 15-18. However, when determining if a claim is arbitrable,

---

[9]  Even if it were the responsibility of the Court to determine which arbitration clause governs this dispute, the Court would agree with the AAA that the 2007 Agreement controls. In fact, the Court doubts that the Asset Agreement has any relevance to these proceedings. The Asset Agreement is essentially a sales contract among one of defendant's subsidiaries, a seller that has no role in this dispute, and several individuals including plaintiff. See Dkt. # 25-1, at 7. Plaintiff argues that the arbitration clauses of the 2007 Agreement and Asset Agreement conflict and either they both are unenforceable or the Asset Agreement supercedes the 2007 Agreement. Dkt. # 25, at 13-17. But the Asset Agreement's arbitration clause applies to " any dispute or claim relating to [the Asset Agreement], any Ancillary Agreement or document executed in connection with [the Asset Agreement] or the transactions contemplated by [the Asset Agreement], or any amendment of any of the foregoing." Dkt. # 25-1, at 33. This dispute over the enforceability of two provisions in the 2007 Agreement is none of those. The dispute does not arise under the Asset Agreement, the 2007 Agreement is not an Ancillary Agreement, the 2007 Agreement was not executed in connection with the Asset Agreement, and the non-compete and confidentiality provisions in the 2007 Agreement are not transactions contemplated by the Asset Agreement. The only reason the Asset Agreement seems to be under consideration in this suit is a poorly executed attempt on the part of plaintiff to distract from the fact that the parties clearly agreed to arbitration.

11

courts "evaluate the factual underpinnings of the complaint rather than merely considering the labels attached to each of the causes of action it contains." Chelsea Family Pharmacy, 567 F.3d at 1197. "If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them." Id. (quoting Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987)) (alteration in original). Focusing on facts rather than on legal labels "prevents a creative and artful pleader from drafting around an otherwise-applicable arbitration clause." Id.; see also Combined Energies v. CCI, Inc., 514 F.3d 168, 172 (1st Cir. 2008) ("[The plaintiff] cannot avoid arbitration by dint of artful pleading alone."); R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 164 (4th Cir. 2004) (a party "may [not] use artful pleading to avoid arbitration"). The factual underpinnings of plaintiff's claim are the same whether considering his plea for a declaratory judgment or an injunction. Plaintiff is asking the Court to interpret the 2007 Agreement and declare the confidentially and non-compete provisions unenforceable under Oklahoma law. See Dkt. # 2-1, at 5-7. Whether any part of the 2007 Agreement violates Oklahoma state law is a quintessentially legal question that falls squarely under the arbitration clause.[10] Thus, plaintiff's claim is arbitrable under the 2007 Agreement's arbitration clause.

Second, the Court considers the Asset Agreement's arbitration clause. The only relevant difference in considering the arbitrability of plaintiff's claim under this clause is that the nonarbitrable carve-out covers "specific performance or injunctive relief" rather than "equitable relief." Dkt. # 25-1, at 33. Therefore, the Court finds that this arbitration clause is also broad and

---

[10]   Plaintiff's assertion that declaratory judgment is a "mild" remedy, see Dkt. # 25, at 17-18, does nothing to address the question of whether his claim is equitable.

should receive a presumption of arbitrability. Plaintiff's request for a declaratory judgment then clearly falls under the arbitration agreement because it is neither specific performance or injunctive relief. Plaintiff's request for injunctive relief would seem to fall under the Asset Agreement.[11] But the Court does not need to decide whether plaintiff's request for an injunction is arbitrable because "[b]road stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 785 (10th Cir. 1998) (quoting Genesco, 815 F.2d at 856) (alteration in original). The only way for the Court to rule on plaintiff's injunction request is to analyze the enforceability of the non-compete and confidentiality provisions in the 2007 Agreement. That question is the heart of this dispute and is arbitrable under the Asset Agreement. Even if plaintiff's request for an injunction were nonarbitrable, the Court would stay the entire suit because arbitrable issues predominate. Thus, whichever arbitration clause applies, this proceeding should be stayed pending arbitration between the parties pursuant to their agreements.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand and Brief in Support (Dkt. # 23) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, Stay and/or Transfer and Supporting Brief (Dkt. ## 16, 19) is **granted** in part, **denied** in part, and **moot** in part. It is granted as to the motion to stay; it is denied as to the motion to dismiss; and it is moot as to the

---

[11] It seems that plaintiff may have preemptively filed his suit in state court in an attempt to avoid arbitration of a breach of contract claim against him. See Dkt. # 16-4. If that is the case, plaintiff should not be able to "draft[] around an otherwise-applicable arbitration clause." Chelsea Family Pharmacy, 567 F.3d at 1197; see also Hospah Coal Co. v. Chaco Energy Co., 673 F.2d 1161, 1164-65 (10th Cir. 1982) (noting that a "declaratory judgment [should not] be used as yet another weapon in a game of procedural warfare").

motion to transfer. An administrative closing order will be entered for the duration of the arbitration proceedings.

**IT IS FURTHER ORDERED** that either party may move to reopen this case within 15 days of completion of the arbitration proceedings.

**DATED** this 7th day of October, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE