UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DR. WILLIAM BEN JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-0520-CVE-PJC |
| | ) | |
| DENTSPLY SIRONA INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Now before the Court is defendant Dentsply Sirona Inc.'s (Dentsply) motion (Dkt. # 37) to confirm the arbitrator's ruling on defendant's motion for a preliminary injunction.

**I.**

Defendant is a business that manufactures, markets, and sells endodontic products for the dental industry. Dkt. # 16-4, at 22. Plaintiff is an endodontist and "well recognized and respected figure in the dental and endodontic business." Id. The parties entered into an agreement, effective June 1, 2007 (2007 Agreement), under which plaintiff would perform consulting services for defendant for ten years and receive annual compensation. Id. at 23-25. Defendant would also pay plaintiff royalties for inventions assigned to defendant under the 2007 Agreement. Id. at 25-27. Plaintiff agreed not to disclose any confidential information about defendant's business affairs and not to work in competition with defendant for three years after the termination of the 2007 Agreement, which expires on December 31, 2017. Id. at 27-28; Dkt. 35-1, at 2. The 2007 Agreement also contains a dispute resolution clause that states:

> Any dispute or claim relating to this Agreement, other than a claim for equitable relief[,] or any amendment thereof, including without limitation as to its existence, validity, enforceability, interpretation, performance, breach or damages, including claims in tort, whether arising before or after the termination of this Agreement, shall be settled only by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("Rules"); provided, however, that: (a) the arbitration shall take place in Chicago, Illinois; (b) there shall be one (1) arbitrator, who shall be selected under the normal procedures prescribed in the Rules; (c) subject to legal privileges each party shall be entitled to discovery in accordance with the Federal Rules of Civil Procedure; (d) at the arbitration hearing each party may present evidence as prescribed by the arbitrator; (e) the arbitrator shall not have the power to award punitive damages; (f) the arbitrator shall issue a written decision explaining the basis of such decision; (g) such decision shall be final, binding and enforceable in any court of competent jurisdiction; (h) the parties shall share equally any fees and expenses of the arbitrator and of the American Arbitration Association.

Dkt. # 16-4, at 30.

On July 12, 2016, plaintiff initiated this suit in the District Court for Tulsa County, State of Oklahoma, seeking a declaration that the confidentially and non-compete provisions of the 2007 Agreement are unenforceable and an injunction against defendant from seeking to enforce either provision. Dkt. # 2-1. On August 8, 2016, defendant removed the suit to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Dkt. # 2. Plaintiff moved to remand to Tulsa County, arguing that this Court does not have subject matter jurisdiction because the amount in controversy does not exceed $75,000 as required under 28 U.S.C. § 1332(a). Dkt. # 23. In response, defendant moved to dismiss, stay, and/or transfer this proceeding, arguing that the 2007 Agreement binds the parties to resolve plaintiff's claims in arbitration. Dkt. # 16. On October 7, 2016, this Court entered an opinion (Dkt. # 33), concluding that it has jurisdiction over this action and that plaintiff's claim is arbitrable under the 2007 agreement. The Court stayed this action pending arbitration, and entered an administrative closing order (Dkt. # 34), directing the Court Clerk to close this case

pending either an order of the Court reopening the action, or until this case is dismissed with prejudice by stipulation of the parties.

On June 19, 2017, the arbitrator issued a ruling (Dkt. # 35-1) on defendant's motion for a preliminary injunction (the Ruling). The arbitrator concluded that, for the purposes of defendant's motion, the 2007 agreement is valid and in effect. Id. at 2. In addition, he concluded that, in order to prevent irreparable harm to defendant, it was necessary to enjoin plaintiff from breaching the 2007 agreement's confidentiality and non-compete provisions, as plaintiff has already taken actions benefitting defendant's competitors and has engaged in other conduct against defendant's best interests. Id. at 3. Accordingly, the arbitrator granted defendant a preliminary injunction prohibiting plaintiff from competing with defendant, revealing any of defendant's confidential information, or intentionally taking action inconsistent with defendant's best interests. Id.

In the Ruling, the arbitrator stated three things that are particularly relevant to the resolution of the instant motion. First, that there will be a final evidentiary hearing, scheduled for "later this year;" according to the parties, this hearing is now set for sometime in December 2017. Id. at 2; Dkt. # 37, at 2. Second, the arbitrator stated, "[a]ll rulings herein are tentative and based on the record presented thus far. Although some of these conclusions may be less likely to change than others, all of them are subject to revision after the final, evidentiary hearing." Dkt. # 37, at 2. Finally, the arbitrator stated that at the initial hearing, "[plaintiff] stated that he had no intention of violating the 2007 agreement." Id. at 3. This fact, the arbitrator continued, "eliminates any hardship the injunction might otherwise impose on [plaintiff] given that the final evidentiary hearing is scheduled to take place before the 2007 agreement expires." Id.

3

On August 11, 2017, defendant filed with this Court a motion to the lift the stay and reopen the case (Dkt. # 35), which the Court granted in an earlier order (Dkt. # 36), and a motion to confirm the arbitrator's ruling for a preliminary injunction (Dkt. # 37), which is currently before the Court.

**II.**

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (1925), "creates the 'federal substantive law of arbitrability . . . .'" Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The "principal purpose" of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 478 (1989). The 2007 Agreement provides that any arbitration will take place pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA Commercial Rules). Dkt. # 16-4, at 30. Pursuant to Rule 37, the "arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief," and "interim measures may take the form of an interim award . . . ." Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures R. 37(a) (Oct. 1, 2013); Dkt. # 42-1, at 25. Pursuant to Rule 47, the "arbitrator may grant any remedy or relief that the arbitrator deems just or equitable and within the scope of the agreement of the parties," and "[in] addition to a final award, the arbitrator may make other decisions including interim, interlocutory, or partial rulings, orders, and awards." Id. R. 47(a)-(b); Dkt. # 42-1, at 29.

Sections 9-11 of the FAA, "provide for expedited judicial review to confirm, vacate, or modify arbitration awards." Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 758 (2008). Section 9 provides, in pertinent part:

4

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration. . .then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title.

9 U.S.C. § 9. Sections 10 and 11 provide any party to the arbitration the right to apply to the court to vacate or modify an arbitration award in certain extenuating circumstances, such as where the award was "procured by undue means," or there was an "evident material miscalculation of figures." Id. §§ 10(a), 11(a).

Sections 9-11 of the FAA "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Hall Street, 522 U.S. at 588. Accordingly, to retain the "speed and inexpensiveness" that are "essential attributes of the arbitration process," United Steelworkers of America, AFL-CIO-CLC v. Ideal Cement Co., Div. of Ideal Basic Industries, Inc., 762 F.2d 837, 841 (10th Cir. 1985), an arbitration award "must be final" before a party may seek judicial review of the award. International Label Service, Inc. v. Engineered Data Products, Inc., 15 Fed. App'x 717, 719 (10th Cir. 2001) (unpublished).[1] Said differently, a party generally may not seek judicial review of an arbitrator's "procedural decisions," Steelworkers, 762 F.2d at 841, or "preliminary rulings." Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 693 (2010) (Ginsburg, J., dissenting). The Supreme Court, however, has not provided "definitive guidance" on what types of awards may be considered final for the purposes of judicial review under FAA §§ 9-11. Stolt-Nielsen, 559 U.S. at 693. Neither has the Tenth Circuit. But several district and circuit courts have considered arbitrators'

---

[1] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

"partial awards" and "interim rulings" final, and thus subject to judicial review, and the Supreme Court has not prohibited this practice. Id. (collecting cases).

### III.

Defendant has filed a motion (Dkt. # 37) asking this Court to confirm the arbitrator's ruling on defendant's motion for a preliminary injunction. In support of its motion, defendant makes three arguments. First, defendant argues that this Court can confirm the Ruling because, in compliance with 9 U.S.C § 9, the parties agreed to judicial enforcement of arbitral awards in section 18(g) of the 2007 agreement, which provides that the arbitrator's "decision shall be final, binding and enforceable in any court of competent jurisdiction." Dkt. # 37, at 3 (quoting 9 U.S.C. § 9 ("if the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award . . . .")).

Second, although defendant concedes that only 'final' arbitration awards are subject to judicial confirmation, defendant points to case law holding that an "interim arbitral decision may be considered final for purposes of confirmation when it finally and definitively disposes of a separate and independent claim." Id. (quoting Island Creek Coal Sales Co. v. City of Gainesville, 729 F.2d 1046, 1049 (6th Cir. 1984), abrogated on other grounds by Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co., 529 U.S. 193 (2000)). Defendant argues that the Ruling finally and definitively disposed of two of defendant's independent claims: (1) that plaintiff's attempted early termination of the 2007 Agreement was improper; and (2) that plaintiff may not compete against defendant during the term of the 2007 agreement–i.e. through December 31, 2017. Dkt. # 37, at 5 (citing defendant's Verified Statement of Claims, Dkt. # 16-4, at ¶¶ 45-47, 63-64, 74, 76-82, 93).

6

Third, defendant argues, without judicial confirmation the Ruling would "lack teeth." Id. at 5 (quoting Arrowhead Glob. Sols., Inc. v. Datapath, Inc., 166 F. App'x 39, 44 (4th Cir. 2006) ("[a]rbitration panels must have the power to issue temporary equitable relief in the nature of a preliminary injunction, and district courts must have the power to confirm and enforce that equitable relief as 'final' in order for the equitable relief to have teeth.")). In other words, according to defendant, "[w]ithout confirmation, [defendant] would have no recourse in the event [plaintiff] breaches his contractual obligations not to compete or disclose [defendant's] confidential information." Id. at 6 (citing Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1022-23 (9th Cir. 1991) ("[a]rbitrators have no power to enforce their decisions. Only courts have that power.")). Confirmation of an arbitrator's award of interim equitable relief is particularly appropriate and important, defendant continues, where the relief was awarded to "preserve assets . . ., which, if not preserved, may render" a subsequent arbitration award "meaningless." Id. at 5 (quoting Pac. Reinsurance, 935 F.2d at 1022-23 (citing Southern Seas Navigation Ltd. v. Petroleos Mexicanos, 606 F. Supp. 692, 694 (S.D.N.Y. 1985))).

In his response (Dkt. # 40) to defendant's motion, plaintiff raises eight arguments that it would be improper for the Court to confirm the Ruling. In its reply (Dkt. # 42), defendant counters plaintiff's arguments. All but one of plaintiff's eight arguments either confuse the issue or lack merit. Below, the Court summarizes the parties' positions and dispenses with all of plaintiff's unmeritorious arguments. Thereafter, the Court addresses the only issue before it that is reasonably in dispute: i.e. whether, in the absence of binding Supreme Court or Tenth Circuit precedent, the Court should join the district and circuit courts that have considered interim arbitral awards final for the purposes of judicial review and confirm the Ruling.

7

Plaintiff's first argument is that the Ruling cannot be considered final, and thus cannot be confirmed, because the arbitrator characterized the Ruling as "tentative" and "subject to revision." Dkt. # 40, at 8-12. Defendant replies, pointing to case law, that to determine whether an interim arbitral award is final, courts should look beyond the arbitrator's own language and "delve into [the award's] substance and impact." Dkt. # 42, at 8 (quoting Publicis Communication v. True North Communs., 206 F.3d 725, 729 (7th Cir. 2000); Southern Seas, 606 F. Supp. at 693-94 (court may look beyond "the arbitrator's own statement that the award was not intended to be a final disposition on the merits" and confirm grant of interim equitable relief)). Plaintiff provides no authority in support of his argument that the arbitrator's own language is dispositive on the question of whether an arbitral award can be considered final. By contrast, defendant points to several cases where courts look beyond the letter, and to the substance and impact, of an interim arbitral award to determine whether it is final and thus subject to judicial review. Accordingly, the Court rejects defendant's position that the Court cannot confirm the Ruling because the arbitrator characterized it as tentative and subject to revision.

Second, plaintiff argues that the "cross-references and overlapping" language in §§ 9-11 of the FAA make clear that Congress intended these provisions to be read together. Id. at 14. This is significant, plaintiff explains, because § 9 provides that confirmation is only possible if the court has the authority to vacate, modify, or correct an arbitral award, and § 10(a)(4) establishes that any "award" referred to in §§ 9-11 "must be 'final.'" Id. at 13-16 (quoting 9 U.S.C. § 10(a) (4) (court may vacate the award of an arbitrator "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, **final**, and definite award upon the subject matter submitted was not made) (bold in original)). Defendant replies that this argument fails to rebut the case law permitting

8

"a district court to confirm an interim arbitration award that resolves an independent claim or a discrete and time-sensitive issue, such as a preliminary injunction." Dkt. # 42, at 3. The Court agrees with plaintiff; the question of whether §§ 9-11 of the FAA require an award to be final before a court may review it is not in dispute (indeed, defendant concedes this point). Rather, the question is whether the Court should consider the Ruling (i.e. an interim award of equitable relief) final for judicial review purposes, as several other district and circuit courts have done under similar circumstances.

Third, plaintiff contends that, under Stolt-Nielsen, to determine whether an arbitral award is ripe for review, a court "should determine (a) 'the fitness of the issues for judicial decision' and (b) 'the hardship of withholding court consideration.'" Dkt. # 40, at 19 (quoting 599 U.S. at 670 n.2). Under this test, plaintiff continues, the Ruling is not ripe for review because: (1) it is not fit for judicial decision, as it is tentative and subject to revision and only final awards are reviewable; and (2) any hardship that defendant "hypothesizes" will occur if this Court declines to confirm the Ruling is "conjectural." Dkt. # 40, at 19. Defendant replies that the Ruling is ripe for judicial review under Stolt-Nielsen because: (1) it is fit for judicial decision, as the arbitrator finally and definitively resolved the discrete issues presented in defendant's motion for injunctive relief; and (2) the arbitrator concluded that defendant "will suffer irreparable harm if an injunction does not issue." Dkt. ## 42, at 7; 35-1, at 3. Plaintiff's argument that the Ruling is not "fit for judicial decision" is plaintiff's only argument that warrants serious consideration–because, to reiterate, the sole question before the Court that is reasonably in dispute is whether the Court should consider the Ruling final and confirm it. And, below, the Court treats this issue fully. By contrast, the Stolt-Nielsen test's hardship prong is obviously satisfied in this case. Contrary to plaintiff's assertion,

9

defendant is not "hypothezing" a "conjectural" hardship that may occur should the Court decline to confirm the Ruling: the arbitrator has already found that plaintiff, in violation of the 2007 agreement, has acted against defendant's best interests and that it was necessary to issue a preliminary injunction in order to prevent plaintiff from causing defendant irreparable harm. Dkt. # 35-1, at 3.

Plaintiff's fourth argument is that there is no reason to believe that the Tenth Circuit would follow the Sixth Circuit's holding in Island Creek (i.e. that "an interim award that finally and definitively disposes of a separate independent claim may be confirmed"), because there is no Tenth Circuit case that endorses Island Creek's holding. Dkt. # 40, at 19-20 (citing 729 F.2d at 1049). As evidence that the Tenth Circuit might be receptive to Island Creek, defendant points to Hicks v. Bank of America, N.A., 218 Fed. App'x 739, 744-45 (10th Cir. 2007), in which the Court stated, "[u]nder the FAA, an arbitration award that does not resolve all controversies between the parties may be confirmed . . ." Dkt. # 42, at 5. As defendant points out, Hicks provides at least some indication that the Tenth Circuit might follow Island Creek's holding.

Fifth, plaintiff argues that the parties' 2007 agreement does not contemplate judicial confirmation of interim rulings, as the agreement is silent on the subject of preliminary injunctions and section 18 "makes it clear that the arbitrator is . . . required to enter a final, binding decision–'the decision'–after an evidentiary hearing [. . .]," and "[t]he 'decision' is the final award." Dkt. # 40, at 21 (emphases in original). Defendant counters that the 2007 agreement does contemplate judicial confirmation of interim rulings because the agreement incorporates the AAA Commercial Rules, which permit an arbitrator to issue "interim, interlocutory, or partial rulings, orders, and awards." Dkt. # 42, at 11 (quoting Am. Arbitration Ass'n, Commercial Arbitration Rules and Mediation Procedures R. 47(b) (Oct. 1, 2013)). In addition, defendant argues that the Ruling

10

qualifies as a final award under section 18 of the 2007 agreement, because the Ruling is a written decision that the arbitrator issued after an evidentiary hearing. Plaintiff's arguments are unavailing. The 2007 agreement clearly contemplates the issuance of interim awards, as it incorporates the AAA Commercial Rules. And, much like his previous arguments, plaintiff's contention that the 2007 agreement does not contemplate judicial confirmation of interim awards, because it envisages an arbitrator issuing a "final decision," does nothing to contradict, or suggest that the Court should not follow, the case law permitting a court to consider certain interim awards final for the purposes of judicial review.

Sixth, plaintiff argues that the AAA Commercial Rules do not contemplate judicial confirmation of interlocutory rulings. Dkt, # 40, at 21. To support this argument, plaintiff points to Rules 52(c), 47(b), and 50. Id. at 21-23. Rule 52(c) authorizes a court to enter "judgment upon the arbitration award;" Rule 47(b) distinguishes between "final award[s]" and "interim rulings;" and Rule 52(c) states that an arbitrator is not "empowered to redetermine the merits of any claim already decided." Id. at 22-23. Therefore, according to plaintiff, these three Rules read in conjunction establish that only final awards–not interim rulings subject to revision–are judicially confirmable. Id. at 23. Defendant counters that this argument is "without merit in light of the federal court decisions confirming" interim awards. Dkt. # 42, at 11. The Court agrees with defendant; yet again, plaintiff's argument does nothing to rebut the case law that suggests Courts may consider interim arbitral awards final and thus subject to judicial review.

Seventh, plaintiff argues that defendant's motion to lift the stay and reopen the case (Dkt. # 35) presents a "procedural problem," because an earlier opinion in this case (Dkt. # 33) stated that "an administrative closing order will be entered for the duration of the arbitration proceedings."

Dkt. # 40, at 23 (quoting Dkt. # 33, at 14). In response, defendant argues that plaintiff failed to seek reconsideration of this Court's opinion lifting the stay (Dkt. # 34) and "cannot do so in response to the instant motion." Dkt. # 42, at 12. Plaintiff's argument that it was procedurally improper for defendant to move the Court to reopen this case–and, by implication, that it was procedurally improper for the Court to do so–is frivolous. Plaintiff points to no authority to support his position. Moreover, the administrative closing order that was entered (Dkt. # 34) explicitly states, "the Court Clerk is directed to administratively close this case <u>pending either an order of the Court reopening this action</u>, or until this case is dismissed with prejudice by stipulation of the parties." (Dkt. # 34) (emphasis added). In compliance with its administrative closing order (Dkt. # 34), the Court reopened this action by issuing a Court order (Dkt. # 36).

Eighth, and finally, plaintiff argues that the Ruling cannot be confirmed because it is insufficiently specific under Federal Rule of Civil Procedure 65(d)(1), which requires that every order granting an injunction must "state the reason why it issues; state its terms specifically; and describe in reasonable detail . . . the act or acts restrained." Dkt. # 40, at 24; Fed. R. Civ. P. 65(d)(1). Defendant retorts that the Ruling was sufficiently specific, as it identifies the reason it was issued and lists three categories of conduct plaintiff is enjoined from engaging in. Dkt. # 42, at 12 (quoting Dkt. #35-1, at 3). Plaintiff's argument that the Ruling is insufficiently specific is itself insufficiently specific. The argument consists of a single sentence ("[t]he Ruling is not specific: it does not specifically describe the behavior or conduct that it prohibits." (Dkt. # 40, at 24)), and the Court would be within its discretion to ignore it. See, e.g., Jeffrey v. CP Kelco U.S., Inc., 544 Fed. App'x 817, 822 n.4 ("[w]e decline to address [appellant's] underdeveloped argument."). A simple review of the Ruling, however, establishes that plaintiff's characterization is wrong; the Ruling clearly, and

12

with specificity, prohibits plaintiff from "competing with [defendant], revealing any of [defendant's] confidential information, or intentionally taking action inconsistent with [defendant's] best interests," and states that the reason plaintiff is so restrained is because, in violation of the 2007 agreement, he has already taken such actions. Dkt. # 35-1, at 3.

Having dispensed with an array of plaintiff's arguments, the Court turns now to the only question before it that is reasonably in dispute–i.e. is the Ruling "fit for judicial decision?" Stolt-Nielsen, 599 U.S. at 670 n.2. The parties agree that no Supreme Court or Tenth Circuit precedent provides a definitive answer to the question of whether a court can or cannot confirm an arbitrator's interim award of equitable relief. The question before the Court, therefore, is whether it should join the district and circuit courts that have reviewed interim arbitral awards and confirm the Ruling. Plaintiff provides no authority, nor any good reason, that suggests the Court should not confirm the Ruling. Defendant, by contrast, presents a non-binding but persuasive body of case law in which district and circuit courts have considered interim arbitral awards final and thus subject to judicial review. And, for the reasons explained below, applying the principles upon which these cases were decided to the instant matter has persuaded the Court to confirm the arbitrator's interim award of equitable relief in this case.

First, the Ruling is not the type of relatively inconsequential "procedural decision" or "preliminary ruling" of which judicial review, in the interest of retaining the efficiency that is the raison d'être of our arbitration system, is disfavored. See Stolt-Nielsen, 599 U.S. at 693 (Ginsburg, J. dissenting); United Steelworkers, 762 F.2d at 841. Rather, the Ruling "finally and definitively" disposes of an independent issue in the arbitration; it enjoins plaintiff from breaching the confidentiality and non-compete provisions of the 2007 Agreement for the pendency of the

13

arbitration. Island Creek, 729 F.2d at 1049.² Moreover, the Ruling awarded defendant a preliminary injunction to preserve defendant's assets– including trade secrets, confidential information, and other benefits defendant gains by plaintiff not competing against it–"which, if not preserved, may render" a subsequent injunction in this arbitration "meaningless." Pac. Reinsurance Mgmt, 935 F.2d at 1022-23. Specifically, if plaintiff breaches the 2007 agreement's confidentiality and non-compete provisions during the pendency of the arbitration, then any subsequent injunction requiring plaintiff to comply with these provisions for three years after the agreement's termination date (i.e. December 31, 2017) would be of no, or significantly less, value to defendant. And indeed, here, judicial confirmation of the Ruling is especially appropriate, as the arbitrator awarded defendant a preliminary injunction based on a finding of irreparable harm. See Southern Seas, 606 F. Supp. at 694 ("That the arbitrators labeled their decision an "interim" award cannot overcome the fact that if an arbitral award of equitable relief based upon a finding of irreparable harm is to have any meaning at all, the parties must be capable of enforcing . . . it at the time it is made."). Finally, confirming the Ruling–which enjoins plaintiff from violating the 2007 agreement until the final evidentiary hearing–does not prejudice defendant since, as he stated to the arbitrator at the initial hearing, he has no intention of violating the 2007 agreement. Dkt. #35-1, at 3.

In sum, the Court joins the district and circuit courts that have reviewed interim arbitral awards and confirms the Ruling, because it finally and definitively enjoins plaintiff from breaching

---

²     The Court notes that defendant mischaracterizes the Ruling as enjoining plaintiff from breaching the 2007 agreement's confidentiality and non-compete provisions through the remainder of the agreement's term–i.e. December 31, 2017. Dkt. #42, at 10. In actuality, the Ruling enjoins plaintiff from breaching the 2007 agreement's confidentiality and non-compete provisions until the final evidentiary hearing, which is scheduled for sometime in December 2017, as the arbitrator made clear that all of the Ruling's conclusions are "subject to revision after the final evidentiary hearing is held." Dkt. #35-1, at 2-3.

the 2007 agreement's confidentiality and non-compete provisions during the pendency of the arbitration, and if the Ruling is not enforced, a subsequent award of injunctive relief to defendant may be rendered meaningless. In this way, the Ruling is not a preliminary or procedural trifle, and expending the judicial resources to confirm it does not frustrate our arbitration system's goal of expediency. To the contrary, confirming the Ruling gives teeth to the arbitrator's interim award of equitable relief, thereby promoting arbitration as an efficacious and reliable alternative to the litigation process.

**IT IS THEREFORE ORDERED** that defendant's motion to confirm the arbitrator's ruling on defendant's motion for a preliminary injunction (Dkt. # 37) is **granted**.

**IT IS FURTHER ORDERED** that the arbitrator's ruling on defendant's motion for a preliminary injunction (Dkt. #35-1) is **confirmed**, and the Court will enter a formal confirmation of the preliminary injunction in accordance therewith.

**DATED** this 27th day of September, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE